# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Application of<br>Mohd Najib Bin Abd Razak,<br><br>*Petitioner*,<br><br>For An Order Pursuant to 28 U.S.C. § 1782<br>To Take Discovery For Use In Foreign<br>Proceedings From: Agnifilo Intrater LLP, and<br>Marc A. Agnifilo,<br><br>*Respondents.* | Case No.1:25-cv-06279 |

## APPLICATION FOR DISCOVERY IN AID
## OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782

Aurora Cassirer
aurora.cassirer@pierferd.com
tel: 917. 817. 6617
Jonathan E. Davis
jed.davis@pierferd.com
tel: 917.725.1340
PIERSON FERDINAND LLP
1270 Avenue of the Americas
7th Floor—1050
New York, NY 10020

Tania Scivetti (*Pro hac vice* motion to be filed)
SCIVETTI AND ASSOCIATES
M-2-20 1st Floor, Plaza Damas
50480 Kuala Lumpur
Malaysia
tania@scivettilegal.com

## <u>TABLE OF CONTENTS</u>

**I. INTRODUCTION**……………………………………………………………………………………1

  The 1MDB Prosecutions In The U.S. (Completed) & Malaysia (Ongoing) ………………4

  The Unfounded Malaysian Proceedings against Petitioner ……………………………6

  March 2021: Mr. Agnifilo Calls-Out The Category Of Evidence At Issue………………8

**II. JURISDICTION AND VENUE**…………………………………………………………10

**III. THE NARROWLY LIMITED DISCOVERY THAT PETITIONER SEEKS**………...10

**IV. PETITIONER SATISFIES THE REQUIREMENTS OF SECTION 1782**……………11

  A. The Petition Meets All Statutory Requirements ……………………………………11

  B. Petitioner Satisfies Each of Intel's Four Factors, Vesting The Court With Discretion
  With Which It Should Authorize Petitioner To Pursue The Limited, Exculpatory
  Discovery Sought ……………………………………………………………………14

   *First Intel Factor:* Respondents Agnifilo Law Office and Mr. Agnifilo Are Not
   Parties To the Malaysian Proceedings Pending Against Petitioner ………………15

   *Second Intel Factor:* The Malaysian Court Will Be Receptive to the Discovery .17

   *Third Intel Factor*: The Request Does Not Conceal An Attempt At Circumventing
   Foreign Proof-Gathering Restrictions Or Other Policies Of a Foreign Country or
   the United States ……………………………………………………………………19

   *Fourth Intel Factor*: The Discovery Requests are Appropriately Tailored ………22

  C. Ex Parte Process is Available, should The Court Prefer That Method ………………11

**V. CONCLUSION**…………………………………………………………………………25

## TABLE OF AUTHORITIES

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ...................................................................................................13

*Application of Malev Hungarian Airlines,* 964 F.2d 97, 101 (2d Cir. 1992)................................15

*Brady v. Maryland*, 373 U.S. 83 (1963) ......................................................................................20

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 81 (2d Cir. 2012) ....................19

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) .............................................................................20

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)...............................15, 23

*Giglio v. United States*, 405 U.S. 150 (1972) ..............................................................................20

*Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. July 3, 2012) ............................................24

*Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011) ........................................15

*In re Accent Delight Int'l Ltd.,* 869 F.3d 121 (2d Cir. 2017) ......................................................12

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006)....................................................................................................17, 19

*In re Chevron Corp.*, No. 2:10-MC-91, 2010 WL 9014422, (D. Vt. Dec. 2, 2010)....................16

*In re Hornbeam Corp.*, No. 17-658-CV, 2018 WL 416486, (2d Cir. Jan. 16, 2018) ..................24

*In re Kolomoisky*, No. M19-116, 20-6 WL 2494332, (S.D.N.Y. Aug. 18, 2006) ........................12

*In re Mangouras*, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017)................................................13

*In re O'Keefe*, 650 F. App'x 83, 85 (2d Cir. May 26, 2016)......................................................24

*In re Rodriguez Guillen*, 2020 WL 3497002 (S.D.N.Y. Jun. 29, 2020) ......................................12

*In re Vinmar Overseas, Ltd.*, 2020 WL 4676652 (S.D.N.Y. Aug. 12, 2020) ..............................12

*Intel Corp. vs. Advanced Microdevices Inc.*, 542 U.S. 241, 256 (2004) ..............................passim

*Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018)......................................16

*Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ..................................................................13, 14

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)..................17

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) .............15, 19, 23

*United Co. Rusal PLC v. Trafigura A.G.*, 2011 WL 1045532 (D. Conn. Mar. 16, 2011)............10

**Statutes**

28 U.S.C. § 1331.......................................................................................................................14

28 U.S.C. § 1782...................................................................................................................passim

**Other Authorities**

Guidelines for Investigations and Enforcement of the Foreign Corrupt Practices Act (FCPA)
    June 9, 2025 ........................................................................................................................6

Malaysian Anti-Corruption Commission Act and the Anti-Money Laundering, Anti-Terrorism
    Financing and Proceeds of Unlawful Activities Act 2001.............................................17,18, 21

Malaysian Criminal Procedure Code ..................................................................................17, 18, 21

Malaysian Evidence Act of 1950 .......................................................................................17, 18, 21

Mutual Assistance in Criminal Matters Act 2002.......................................................................18

Y.A. Wang, "Exporting American Discovery, 87 Univ. of Chicago Law Rev. 2029, 2106 (2020)
    ......................................................................................................................................20

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

In Re: Application of
Mohd Najib Bin Abd Razak,

*Petitioner*,

For An Order Pursuant to 28 U.S.C. § 1782
To Take Discovery For Use In Foreign
Proceedings From: Agnifilo Intrater LLP, and
Marc A. Agnifilo,

*Respondents.*

### APPLICATION FOR DISCOVERY IN AID
### OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782

1.      Petitioner Mohd Najib Bin Abd Razak ("Petitioner" or "Mr. Razak"), the former Prime Minister of Malaysia, respectfully applies for an order pursuant to 28 U.S.C. § 1782 authorizing his attorneys to issue subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure, upon Respondents Agnifilo Intrater LLP ("Agnifilo Law Firm") and Marc A. Agnifilo ("Mr. Agnifilo") to produce documents and provide testimony for use by Petitioner in defending criminal charges brought against him by Malaysian prosecutors (the "Malaysian Proceeding"). If the requested Order is granted, Petitioner will in turn move before Hon. Margo K. Brodie, Chief Judge of the Eastern District of New York, to modify the continuing protective order in *United States v. Low Taek Jho and Ng Chong Hwa*, No. 18-CR-538 (MKB) (E.D.N.Y.) ("Ng Criminal Case"), previously issued during the pendency of that case and other investigations related to the conspiracy to defraud 1Malaysia Development Berhad Malaysia's sovereign wealth fund ("1MDB").

## I. **INTRODUCTION**

2.     This is the second application brought by Mr. Razak, pursuant to 28 U.S.C. § 1782, seeking discovery in the U.S. for use in the Malaysian Proceeding. He commenced the first and broader application in November 2020 under Southern District of New York Docket Number 1:20-MC-00387 (JGK) (KHP) ("Razak Initial 1782 Proceedings"). Under that application, Mr. Razak sought discovery from Goldman Sachs and its former employee Tim Leissner, a charged coconspirator-turned-cooperating witness in the Ng Criminal Case. In that case, the U.S. government had indicted Ng Chong Hwa ("Roger Ng"), Leissner's Malaysia-based Goldman Sachs colleague and also Low Taek Jho ("Jho Low"), now a fugitive, who abused his influence to loot billions for himself and his cronies, and make huge payoffs to others. In February 2021, however, before the requested discovery had been produced, EDNY prosecutors intervened and, relying on evidence submitted *ex parte* and under seal concerning ongoing law enforcement efforts, obtained a stay of the Razak Initial 1782 Proceedings. *Id*., ECF No. 48-49 (Parker, M.J.) (May 7, 2021) and No. 55 (Koetl. D.J.), ECF No. 55 (June 22, 2021). As a result, Petitioner was unable at that juncture to obtain discovery from either Goldman Sachs or Leissner. Accordingly, in spring 2022, in light of the ongoing nature of the government's case against Ng -- who had not yet been sentenced --Mr. Razak moved to dismiss the initial 1782 proceedings, voluntarily and without prejudice. Thereafter, the Court granted the dismissal motion. *Id*., ECF Nos. 61-61.

3.     As further described below, however, in light of vastly changed circumstances and continuing manifest need, in early 2025 Mr. Razak sought leave to renew his prior application, modified to seek authorization to seek discovery solely from Leissner and from Ng's defense team (Marc Agnifilo, *et al*.).  The renewal request was based on the subsequent

waning of U.S. government's interests in continuing to investigate the 1MDB fraud, coupled with an earlier remarkable development: the March 2021 letter, signed by Mr. Agnifilo for the entire Ng defense team. The letter, publicly filed with Judge Brodie in EDNY, constituted a direct response to EDNY prosecutors' having intervened and moved to stay the Razak Initial 1782 Proceedings in SDNY.  In that letter, Mr. Agnifilo and his colleagues complained that the government was blocking Petitioner from obtaining documents produced by Goldman Sachs to the government, which documents Mr. Agnifilo and his colleagues had already reviewed and determined clearly to exculpate Mr. Razak.

4.      Against that backdrop, Petitioner filed earlier this year for leave to renew his original 1782 application. The assigned SDNY magistrate judge (Hon. Katharine H. Parker) denied that request. She held that Fed. R. Civ. P. 60(b), precluded reapplication by renewal on multiple grounds: the passage of time since the 2022 voluntary dismissal; the proposed addition of the Agnifilo Law Firm and Mr. Agnifilo as respondents; together with circumstances insufficient to warrant the relief requested.  Razak Initial 1782 Proceedings, ECF No. 103 (April 25, 2025), at 7-12.  The same Court also emphasized, however, that "[t]his recommendation does <u>not</u> preclude Petitioner from filing a new action." *Id*. at docket text accompanying report and recommendation*, adopted by* Koetl, D.J, in a May 12, 2025 order, ECF No. 104.

5.      Accordingly in this new Application, Mr. Razak respectfully requests that this Court authorize him pursuant to 28 U.S.C. §1782 to issue the proposed subpoenas.  As explained below, these subpoenas only pertain to the narrow subset of Goldman Sachs-origin documents that Mr. Agnifilo and his co-counsel recognized stood to exculpate Petitioner, but which are not yet public documents, since they were not (unlike similar others counsel for Mr. Razak sought and obtained) admitted into evidence at Ng's trial.

6.     As a foreign national, Mr. Razak is required by 18 U.S.C. § 1782 first to move in SDNY to obtain such predicate authorization because Mr. Agnifilo and his colleagues are based in SDNY.  Only upon being so authorized in this jurisdiction can he then pivot to the EDNY Court overseeing the Ng Criminal Case.  There, he aims in turn to request that Judge Brodie modify the original protective order, whose breadth may bar access even to the limited evidence sought. This Court should therefore grant Mr. Razak's well-founded application in recognition that it is authorized under 28 U.S.C. §1782,  subject to the EDNY Court's final determination whether to effectuate his 1782 rights via a limited carve-out from the 2019 protective order.

<u>The 1MDB Prosecutions In The U.S. (Completed) & Malaysia (Ongoing)</u>

7.     As alleged by U.S. and Malaysian authorities in their respective prosecutions, between 2009 and 2015, Jho Low and Malaysia-based Goldman Sachs executives Tim Leissner, Roger Ng and others conspired to divert billions of dollars from 1MDB.  To further and conceal their scheme, Low, Leissner, Ng and the others arranged for kickbacks and bribes to be paid to officials of 1MDB to ensure that various illegal transactions were either improperly approved or went unnoticed.

8.     In 2018 Leissner became a prosecution witness pursuant to a cooperation agreement, upon pleading guilty in the Eastern District of New York to a two-count criminal information.  See United States v. Leissner, No. 18-CR-439 (MKB) (E.D.N.Y.) ("Leissner Criminal Case"), at ECF No.-16 ("Leissner Information") and ECF No. 47 (redacted plea minutes).  Shortly thereafter, the government obtained grand jury indictments against Low and Ng ("Ng Criminal Case"). In related proceedings filed in 2020, the Malaysia subsidiary of Goldman Sachs pleaded guilty to FCPA violations and Goldman Sachs entered into a three-year

deferred prosecution agreement, and agreed to pay more than $2.9 billion in forfeiture and restitution. *See United States v. Goldman Sachs Group. Inc*., No. 20-CR-437 (MKB) (EDNY) ("Goldman Sachs Criminal Case"),  ECF Nos. 7, 8, 10 and 14.

9.     Jho Low remains a fugitive and has never since been arrested.  Recent reports place him in Shanghai, Peoples' Republic of China. Roger Ng, Jho Low's nominal co-defendant, however met a very different fate. By 2018, he found himself detained in Malaysia at the request of the United States and then extradited to the Eastern District of New York. In July 2019, incident to pretrial proceedings, the trial court in the Ng Criminal Case approved and entered a protective order previously negotiated between the government and Ng's defense counsel ("EDNY Protective Order").  Ng Criminal Case ECF No. 26.

10.     In 2022 Ng proceeded to trial. There, Leissner emerged as the government's principal cooperating witness and testified at length.  In April 2022, a jury in the Eastern District of New York convicted Ng on three counts arising from the 1MDB scheme.  Ng Criminal Case ECF No. 198.

11.     Thereafter and to date, the 1MDB investigations and prosecutions at issue and FCPA investigations in general have progressively waned.  In January 2023, the Malaysian High Court granted Ng a "discharge not amounting to an acquittal" at the request of Malaysian prosecutors, ostensibly because he had yet to be sentenced in the U.S. prosecution.  *See* Second Declaration of Muhammad Shafee Bin Md. Abdullah (February 7, 2025), submitted in support hereof and originally submitted in Razak Initial 1782 Proceedings) ("2d Shafee 2d Decl.") – at Ex. 8 thereto. In March 2023, Hon. Margo K. Brodie sentenced Ng to a 10-year term of imprisonment and extensive forfeiture.  Ng Criminal Case, at ECF No. 249.  Ng duly filed an

appeal of his conviction and sentence. That appeal has been fully briefed and argued, but has not yet been decided.  *See Ng v. United States*, No. 23-6233 (2d Cir.) ECF Nos. 1, 61-63.

12.    In Fall 2023, the U.S. government agreed to return Ng to Malaysia under a pre-existing extradition arrangement. To effectuate that agreement, Judge Brodie, at the request of EDNY prosecutors, adjourned Ng's prison sentence surrender date *sine die*.  Ng Criminal Case, *Id*. at ECF No. 274.  Ng reportedly remains free in Malaysia. Although sentenced by the EDNY Court to a 10-year prison term, he has never served a day in custody since returning to Malaysia.

13.    U.S. efforts to prosecute the 1MDB frauds in issue appear over. Leissner's cooperation with the U.S. investigation effectively ended when he was sentenced in May 2025 to two-years in prison (it being very much contrary to DOJ practice to expect continued cooperation from already-sentenced cooperators facing so little time.)  Moreover, at about the same time, the current Administration disbanded the DOJ and FBI units and programs responsible for developing and coordinating major kleptocracy investigations, and limited the reach of the Foreign Corrupt Practices Act.[1]  Accordingly, the rationale (if any) for keeping the protective order that Judge Brodie entered in 2021 in force, unmodified, is low. Conversely, the grounds for permitting Mr. Razak to probe the known store of evidence to elicit facts exculpating him of charges in Malaysia are stronger than ever.

---

[1] *See, e.g*., "Guidelines for Investigations and Enforcement of the Foreign Corrupt Practices Act (FCPA)," June 9, 2025 memorandum from Deputy Attorney General to DOJ Chief Of Criminal Division (available at https://www.justice.gov/dag/media/1403031/dl). In its April 25, 2025 Report and Recommendation in the Razak Initial 1782 Proceedings (ECF No. 103, at 11), the Court (Parker, MJ), recognized  this new reality and in particular, the disbanding of DOJ's Foreign Influence Task Force.

The Unfounded Malaysian Proceedings against Petitioner

14.     Law enforcement in the United States and Malaysia have formally charged Jho Low and Roger Ng with misappropriation of billions of dollars from the 1MDB project and paying off unnamed Malaysian and other nations' officials. In reality, however, the Malaysian government is not actively pursuing either man.  Instead, the Malaysian government continues to prosecute Mr. Razak, contending that he was the knowing beneficiary of the proceeds from the fraud on 1MDB. This past May, after several years of receiving proof, a Malaysian court concluded evidentiary proceedings.  In the course thereof, Mr. Razak rebutted the prosecution's allegations, presenting a vigorous defense via sworn testimony, documents and intensive cross-examination of the prosecution's witnesses.

15.     As his counsel in Malaysia attests, however, the evidentiary process in that nation differs substantially from that in the United States.  While the trial court has completed receiving testimony and has scheduled dates in Fall 2025 for submission of trial briefs and argument on the evidence, Malaysian procedure allows the admission at any time of additional related evidence bearing on contested issues.  *See* Third Declaration of Muhammad Shafee Bin Md. Abdullah (April 9, 2025), submitted in support hereof and originally submitted in Razak Initial 1782 Proceedings) ("3d Shafee Decl.") at ¶¶ 5-12.  Thus, in the Malaysian judicial system, evidence that Mr. Razak seeks under authority of the instant 28 U.S.C. § 1782 application can be offered for admission in the continuing hearings before the trial court or later at appellate level (if before then, the trial court does not acquit Mr. Razak)

16.     To date, Petitioner has defended against the Malaysian charges based on already-available documents and transcripts. Some of that evidence establishes, for example, that senior officials at 1MDB perpetrated the scheme to defraud it, received kickbacks and bribes for doing

so – but to avoid responsibility for their own crimes, falsely implicated Mr. Razak. See 2d Shafee Decl. ¶¶ 14-16. Moreover, as is already at issue in Mr. Razak's trial, the proof demonstrates that Leissner and Roger Ng never spoke to Mr. Razak about the 1MDB Scheme. Neither Leissner nor Roger Ng ever confirmed that Mr. Razak had ever directed co-conspirators who purported to act at his instruction. Petitioner's trial counsel adduced some of this evidence from discovery obtained from Malaysian prosecutors and other aspects from transcripts of the Ng trial in the Eastern District of New York.

17.     There remains, however, an outstanding, efficient but as-yet untapped source of more exculpatory evidence: the Agnifilo Law Firm and its name-partner, Mr. Agnifilo. As set forth below, in March 2021, prior to Ng's trial in EDNY, Mr. Agnifilo and his colleagues called out a rich vein of exculpatory material they had identified in the vast volumes of Goldman Sachs files that the government had produced in discovery. Again, to date, Petitioner has only had access to the subset of those documents that became public record upon admission into evidence at Ng's 2022 trial in EDNY. With Mr. Razak effectively on trial for his life, however, it is imperative that on his behalf, counsel pursue predicate authorization under 28 U.S.C. § 1782 and then modification of the EDNY protective order, so as to discover from the Agnifilo Law Firm and Mr. Agnifilo attorneys the remaining documents, which never became public record – but likewise exculpate Mr. Razak.

March 2021: Mr. Agnifilo Calls-Out The Category Of Evidence At Issue

18.     The U.S. and Malaysian prosecutions of the 1MDB frauds are – or at least are supposed to be – about the same scheme, its leaders, and its methods of operation. It is therefore noteworthy that after EDNY prosecutors intervened in early 2021 to stay discovery in the Razak Initial 1782 Proceedings, Mr. Agnifilo and his colleagues publicly filed a stinging letter to the

District Judge Brodie in which, among other things, they objected that the government was wrongly preventing not just Mr. Ng but also Mr. Razak from accessing exculpatory evidence present in Goldman Sachs files. Mr. Agnifilo explained that he and his colleagues had spotted a tranche of evidence embedded in discovery originating from Goldman Sachs that exculpated both men. The relevant passage from Mr. Agnifilo's March 12, 2021 letter brings this squarely home:

> Second, Ng has repeatedly asserted that the Government is intentionally withholding exculpatory information in the form of material and representations made by Goldman Sachs to the Government over the course of repeated meetings and presentations. As part of what is an apparent pattern, the Government has intervened in the Southern District civil case solely to ensure that a defendant in a foreign prosecution, namely the former Malaysian Prime Minister, is denied that which a Judge in the Southern District has already ruled he should receive. Specifically, the Government does not want Razak to have discovery provided by Goldman Sachs and Leissner that would indisputably advance Razak's stated factual defense.[1] Due to the Protective Order in the instant case, counsel for Ng is not at liberty to describe the nature of the evidence, and we do not do so. However, counsel is free to say, and may be ethically obligated to say, that Goldman Sachs and Leissner are in possession of material that defendant Razak does not appear to have that would be consistent with his stated defense, as set forth in public documents.[2] Given that the Razak trial is ongoing in Malaysia, there appears to be a time-sensitivity to him receiving this material.[3] Therefore, by seeking to prevent Razak's lawyers from securing discovery from Goldman Sachs and Leissner, the Government is actively keeping exculpatory evidence from a criminal defendant in the midst of his trial.

Ng Criminal Case, ECF No. 64 (emphasis added). The language of the first footnote in the above passage is likewise telling (for brevity, text of the second and third footnotes omitted) as the letter from Mr. Agnifilo and his colleagues stated that they already knew Goldman Sachs' documents "indisputably" would "advance" Mr. Razak's pursuit of:

> . . . evidence that certain members of 1MDB made their own corrupt arrangements with Jho Low or Leissner or others associated with them[,] to show that while there may have been a bribery relationship involving certain people at 1MDB, these were arrangements reached individually by each 1MDB member without the participation of the former Prime Minister.

Ng Criminal Case, ECF No. 64, note 1 (emphasis added).

19.     Accordingly, Petitioner seeks authorization from this Court pursuant to 28 U.S.C. § 1782, and thereupon intends promptly to move in EDNY to modify the existing Protective Order, duly to discover:

    a.   From the Agnifilo Law Firm (which in 2024 succeeded Brafman & Associates as Mr. Ng's counsel), any non-privileged documents in its possession, custody or control that informed the above statements in Mr. Agnifilo's March 2021 letter or that the Agnifilo Law firm thereafter ascertained are relevant to the truth of those statements; and

    b.   From Mr. Agnifilo individually, any non-privileged information that informed the above statements in his March 2021 letter or that he subsequently learned that are relevant to the truth of those statements.

## II. JURISDICTION AND VENUE

20.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the application arises under federal law -- specifically 28 U.S.C. § 1782.  *See, e.g., United Co. Rusal PLC v. Trafigura A.G.*, 2011 WL 1045532 (D. Conn. Mar. 16, 2011).

21.     Venue is appropriate in this District under 28 U.S.C. § 1782, which empowers a district court in "the district in which a person resides or is found" to order discovery. The Agnifilo Law is based in Manhattan and Mr. Agnifilo likewise resides there.

## III. THE NARROWLY LIMITED DISCOVERY THAT PETITIONER SEEKS

22.     The trial court in the Malaysian Proceeding will hear closing arguments this coming Fall. As previously stated, however, Malaysian procedure allows for introduction of new evidence at that stage and the appellate stage– and this latitude plainly would encompass exculpatory evidence of the kind sought via the instant Application.  3d Shafee Decl. ¶¶ 5-12.

23.     In addition, Petitioner has also already offered into evidence in the Malaysian Proceedings portions of trial transcripts containing Mr. Agnifilo's cross-examination of Leissner. His purpose was manifold: to establish that he did not instruct, encourage, authorize,

or endorse the payment of any bribes or kickbacks to himself or others; and that that Leissner, Roger Ng, and others never confirmed with Petitioner that Low was acting on Petitioner's behalf, despite the obvious illegality of Low's purported instructions.

24.    Beyond that, however, Petitioner has ample reason to inquire of the Agnifilo Law Firm and its lawyers as to whether they know of additional exculpatory materials contained in documents produced by the government that originated with Goldman Sachs. Mr. Agnifilo and his colleagues necessarily (and expertly) focused on impeaching lead government witness Tim Leissner with respect to his testimony against Ng.  That leaves open to question, and therefore for appropriate probing by Petitioner's defense counsel in discovery authorized pursuant to 28 U.S.C. § 1782, whether the same Goldman Sachs-origin document set includes additional admissions or impeachment material exculpating Mr. Razak.

25.    Petitioner therefore respectfully requests authorization under 28 U.S.C. § 1782 to seek documentary discovery from the Agnifilo Law Firm and Mr. Agnifilo relating to, *inter alia*, (1) the basis of the cited assertions in Mr. Agnifilo's March 2021 letter (*see* ¶ 17 above); and (2) evidence obtained by the Ng defense team that bears on the truth of those assertions, whether before or after that letter was filed in the Ng Criminal Case. *See* proposed requests for discovery to Agnifilo Law Firm (Fed. R. Civ. P 45 documents subpoena and separate Fed. R. Civ. P. 30(b)(6) subpoena for documents and testimony),  and to Mr. Agnifilo (Fed. R. Civ. P. deposition subpoena, annexed as Exhibits 1 through 3 respectively, of this Petition. Petitioner Meets The Requirements of Section 1782

**IV. PETITIONER SATISFIES THE REQUIREMENTS OF SECTION 1782**

A. The Petition Meets All Statutory Requirements

26.   Section 1782 authorizes this Court to order any person found in the Southern District of New York to give testimony or produce documents for use in a foreign proceeding,

upon the application of any person with an interest in that proceeding. Specifically, Section 1782(a) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a)

"Section 1782 applicants must meet certain statutory requirements: (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be for use in a foreign proceeding before a foreign tribunal, and (3) the applicant must be either a foreign tribunal or an interested person." *In re Accent Delight Int'l Ltd.,* 869 F.3d 121, 128 (2d Cir. 2017) (quotations omitted). Petitioner satisfies each of these requirements.

27.     Mr. Agnifilo reportedly resides in this District, in Manhattan, and the Agnifilo Law Office maintains offices in Manhattan. *See, e.g., In re Kolomoisky*, No. M19-116, 20-6 WL 2494332, at *1 (S.D.N.Y. Aug. 18, 2006) (maintaining office here basis to determine entity is found within the jurisdiction).

28.     Second, the application satisfies the requirement that the discovery sought be intended for use in a foreign proceeding before a foreign tribunal. The Malaysian Proceeding is pending in the Kuala Lumpur High Court, which is a foreign tribunal. A foreign criminal action satisfies the statutory requirement that there be a foreign proceeding. *See, e.g., In re Vinmar Overseas, Ltd.*, 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12, 2020) (criminal investigations in a foreign country satisfied this requirement*); In re Rodriguez Guillen*, 2020 WL 3497002, at *2

(S.D.N.Y. Jun. 29, 2020) (foreign proceedings included a criminal complaint that had initiated legal proceedings and an investigation); *In re Mangouras*, 2017 WL 4990655, at \*5 (S.D.N.Y. Oct. 30, 2017) (discovery which sought to challenge a foreign criminal conviction satisfied the foreign proceeding requirement).

29.    To establish that the discovery is for "use" in a criminal proceeding, the applicant must "establish that he or she has the practical ability to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd*., 869 F.3d 121, 132 (2d Cir. 2017). "[T]he term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" Id. "[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Here, Petitioner easily satisfies this standard. He is the defendant in the Malaysian Proceeding and is legally permitted to submit evidence in support of his defense - including on at trial, on appeal or in any other phase. 2d Shafee Decl. ¶¶ 19-23; 3d Shafee Decl. ¶¶ 5-12.

30.    Third, Petitioner is an "interested person" within the meaning of the statute since he is the criminal defendant in the Malaysian Proceeding. *See, e.g., Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("No doubt litigants are included among . . . the interested persons who may invoke § 1782" (quoting *Intel Corp. vs. Advanced Microdevices Inc*., 542 U.S. 241, 256 (2004)).

31.    Accordingly, Petitioner meets each of the statutory requirements set forth in Section 1782.

B. Petitioner Satisfies Each of Intel's Four Factors, Vesting
The Court With Discretion With Which It Should Authorize
Petitioner To Pursue The Limited, Exculpatory Discovery Sought

32.    Under *Intel*, if a court determines that an applicant has satisfied the three statutory factors set out above, it  must proceed to weigh four additional factors in determining whether to exercise its discretion and grant the requested discovery.  *Intel*, 542 U.S. at 264. The four *Intel* factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that the "foreign tribunal has jurisdiction over [it];" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court juridical assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the requests are "unduly intrusive or burdensome" and if so, whether those requests can be "trimmed." *Id*. at 264-65; *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

33.    The overarching principles that Section 1782 advances are also relevant to the application court's decision whether to authorize the requested discovery.  "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247.  While the legislation has undergone several amendments, these amendments have each provided more, not less, discovery for use in more, not fewer, judicial and quasi-judicial fora, in connection with more, not fewer, types of proceedings. *Id*. at 248-49. As the Seventh Circuit has explained, "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as much discovery as it could if the

lawsuit had been brought in that court rather than abroad*." Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (internal citations omitted).

34.    Two statutory goals guide how the Court is to channel its discretion under Section 1782: "provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourage[e] foreign countries by example to provide similar means of assistance to our courts*[.]" Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (quotation omitted).

35.    To that end, "Congress intended . . . that 28 U.S.C. § 1782 would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed." *Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992) (quotation omitted). "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of  discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1102 (2d Cir. 1995).  Indeed, if a court fails to consider this backdrop, it risks abusing its discretion. *Malev*, 964 F.2d at 101-02.

36.    Applying these factors and considering the overarching principles behind the statute, this Court should permit Petitioner to obtain the requested discovery.

> *First Intel Factor: Respondents Agnifilo Law Office and Mr. Agnifilo Are Not Parties To the Malaysian Proceedings Pending Against Petitioner*

37.    The first Intel factor considers whether the respondent is a participant in the foreign proceeding because when a respondent is a party, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when the evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264 (("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").

38.    U.S.-based counsel Agnifilo Law Office and Mr. Agnifilo plainly are not parties to Malaysian Proceedings. On information and belief, Ng is also not a party to those proceedings, as Malaysian prosecutors have apparently seen fit to leave him entirely at liberty since his return from U.S. custody. There also is no indication that Malaysian authorities will prosecute him in a related but separate case.

39.    Moreover, the Agnifilo Law Office and Mr. Agnifilo each possess evidence relevant to Petitioner's claims, namely documents and knowledge relating to the basis and truth of Mr. Agnifilo's March 2021 letter disclosing substantial exculpatory evidence in the government's Goldman Sachs-related production to Ng. As detailed above, that evidence is important to Petitioner's defense in the Malaysian Proceedings. At the same time, however, they remain outside the Malaysian's tribunal's reach.  Ng's defense team are New York-based and, as best as Petitioner can determine, it will not travel or otherwise be found there any time in the near future. Their base in New York and absence of a Malaysia office weighs in favor of granting the application. *See In re Chevron Corp.*, No. 2:10-MC-91, 2010 WL 9014422, at *4 (D. Vt. Dec. 2, 2010).

40.    Petitioner is mindful that as interpreted by *Kiobel v. Cravath, Swaine & Moore LLP,* 895 F.3d 238, 245 (2d Cir. 2018) the first Intel factor counsels against granting a Section 1782 petition seeking documents' through a proceeding in the United States if the real party from whom documents are sought is involved in foreign proceedings. *Kiobel,* however, presents different circumstances than those here.  In the cited case, there were reasons for concern that granting the requested disclosure would jeopardize "the policy of promoting open communications between lawyers and their clients" because the documents sought in the United States (i) would not be discoverable abroad and (ii) they were sent to the United States "solely

for purpose" of American litigation.  By contrast the documents sought in the instant proceedings would be discoverable abroad if they were located in Malaysia and these documents have been located in the United States to begin with. 2d Shafee Decl. ¶¶ 20-23.

41.    The first Intel factor therefore weighs in favor of granting Petitioner's application.

*Second Intel Factor:* The Malaysian Court Will Be Receptive to the Discovery

42.    The second *Intel* factor considers the nature of the foreign tribunal and its receptiveness to the requested discovery. This factor weighs in favor of granting the petition unless there is authoritative proof that a foreign tribunal would reject evidence obtained through a Section 1782 proceeding. *See Minatec Fin. S.A.R.L. v. SI Grp. Inc*., 2008 WL 3884374, at *6-7 (N.D.N.Y. Aug. 18, 2008) (granting discovery request in absence of "neither any rejection nor offense taken by the German tribunals" to the discovery and finding this factor favors petitioner); *cf. In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) ("[P]roof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery"). There is no such proof in this case.

43.    Malaysia's legal system is modeled upon the English legal system and adheres to the common law. As in the United States judicial system, Malaysian courts provide criminal defendants with the opportunity to submit evidence in favor of their case, such as pursuant to Sections 179(2) and 181 of the Malaysian Criminal Procedure Code ("CPC").  2d Shafee Decl. ¶ 20; 3d Shafee Decl. at ¶ ¶ 5-12 . So long as the evidence is otherwise admissible, Malaysian courts are receptive to receiving it by virtue of the Malaysian Evidence Act of 1950 (in particular Section 32(1)(c)) and also Section 52 of Malaysian Anti-Corruption Commission Act 2009.   2d Shafee Decl. ¶¶ 23.

44.    Moreover, Malaysian courts are not hostile to admitting documents that originate from outside Malaysia. Indeed, multiple Malaysian statutes directing the automatic admission of foreign evidence in certain circumstances. These statutes include Malaysia's Evidence Act (in particular Section 90E), Mutual Assistance in Criminal Matters Act 2002 ("MACMA"), Anti-Corruption Commission Act and the Anti-Money Laundering, Anti-Terrorism Financing and Proceeds of Unlawful Activities Act 2001.  2d Shafee Decl. Id. ¶ ¶ 21-23.

45.    Clearly, the Agnifilo Law Office and Mr. Agnifilo are not located in Malaysia. Accordingly, Malaysia would allow discovery through its own courts by virtue of Sections 51 of the CPC, and if their statement were recorded pursuant to Section 112 of the CPC; Section 30 of the Anti-Corruption Commission Act; and Section 32 of the Anti-Money Laundering Act. 2d Shafee Decl. ¶ 21.  Petitioner would not face any barriers to using the information discovered in this proceeding in the Malaysian proceedings by virtue of Section 32(1)(c) of the Evidence Act. 2d  Shafee Decl. ¶ 21-23.  While Section 1782 does not by its terms require the discovery sought thereunder to also be available under the practice of the foreign court, *Intel*, 542 U.S. at 253, the fact that the foreign court provides for similar discovery by those within its jurisdiction demonstrates that it is receptive to the evidence gathered in a Section 1782 proceeding.

46.    Malaysia also maintains a counterpart to Section 1782 that would permit the U.S. government to obtain evidence located in Malaysia for use in a U.S. criminal proceeding: MACMA. Also, Section 396 of the CPC provides that where the attendance of a person who is to give evidence cannot be procured without unreasonable delay, the prosecutor may apply to the court of jurisdiction for the production of that person to record and document that person's evidence on oath. 2d Shafee Decl. ¶ 22.  Akin to the United States criminal justice system, the Malaysian criminal justice system provides the fullest latitude for any defendant to discover any

evidence, be it oral testimony or documents, under the expansive principles of fair trial guaranteed under Article 5 of the Malaysian Constitution which inter alia, embodies the principles of Equality of Arms, "No property in a witness," and the extension of cooperation in criminal justice to the international comity. 2d Shafee Decl. ¶ 21.

47.    Last, enforcement of this application comports with one of the important congressional purposes behind Section 1782: that of encouraging reciprocity with other nations. *Schmitz*, 376 F.3d at 84-85. The second *Intel* factor thus weighs in favor of granting Petitioner's application.

> *Third Intel Factor:* The Request Does Not Conceal An Attempt
> At Circumventing Foreign Proof-Gathering Restrictions
> Or Other Policies Of a Foreign Country or the United States

48.    The third *Intel* factor considers whether the Section 1782 petition is being used to circumvent foreign proof-gathering restrictions, or is otherwise inconsistent with the policies of the foreign country or the United States. *Intel*, 542 U.S. at 264-65.

49.    Some courts have interpreted this discretionary factor as an inquiry into the Petitioner's good faith. *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 81 (2d Cir. 2012); *Gemeinshcaftspraxis,* 2006 WL 3844464, at *7. Petitioner's request here, however, is made in good faith, not for purposes of harassment and in accord with U.S. as well and Malaysian policy considerations

50.    As a threshold matter, the instant efforts by Mr. Razak to subpoena the subject evidence fully accord with core principles of the United States justice system. As the Supreme Court has stated, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete

defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This right includes the disclosure of exculpatory and impeachment evidence by the government. *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

51.  Likewise, in criminal prosecutions in the United States, defendants are entitled to subpoena witnesses to produce documents and provide testimony at a trial or a hearing. *See, e.g.*, Fed. R. Crim. P. 17. The Federal Rules of Criminal Procedure further allow for the deposition of a witness and the production of documents to preserve a witness' testimony for trial, including, analogous to Petitioner's position in Malaysia, seeking information from a witness in the United States, a witness who may be located outside the United States. *See* Fed R. Crim P. 15.

52.  Mr. Razak, moreover, has consistently and in good faith heeded the only current element of U.S. policy that disfavors his pursuit of the exculpatory evidence at issue: the EDNY protective order in the Ng Criminal Case.  As he has said before and reiterates now, the discovery authority that as a foreign national he requests that this Court grant pursuant to 28 U.S.C. § 1782 is a precondition to his pursuit of decisive relief in the EDNY Court.[2]  If this Court grants him that essential authority, then he can and will promptly move before Judge Brodie in EDNY to amend the protective order to permit Mr. Agnifilo and his law firm to make the proposed disclosures. But of course, the EDNY Court will only grant those modifications if it duly determines that the equities of permitting Petitioner to pursue exculpatory evidence outweigh any government investigative interests that may remain, 6 years after the order was first entered.

---

[2] With respect to any discovery that a non-party foreign national seeks through discovery "[w]ithin the United States, <u>all requests are ultimately executed by federal district courts under § 1782</u>." Y.A. Wang, "Exporting American Discovery, 87 Univ. of Chicago Law Rev. 2029, 2106 (2020) (emphasis added)

53.  Accordingly, nothing in the instant application circumvents existing U.S. policy. To the contrary, Petitioner directly and candidly seeks the requisite permission of this Court to acquire the proposed limited subpoena power over Mr. Agnifilo and his law firm and only upon obtaining it, to request that the EDNY Court determine whether a change in policy necessary to enable his exercise of that subpoena power it is just and appropriate.

54.  In addition, Petitioner's request comports with Malaysian statutory and judicial policies.  Mr. Agnifilo and his law firm appear to be outside the jurisdictional reach of Malaysian courts. U.S. judicial assistance is therefore required to discover materials needed in Petitioner's defense in case in Malaysia.  The evidence sought here is likely to aid in Petitioner's defense of the criminal charges against him. Evidence showing that the witnesses against him participated in and benefited from the conspiracy is likely to damage their credibility. Evidence that Ng and the other coconspirators did not take any instructions whatsoever from Petitioner or verify that Low's or Leissner's representations about Petitioner's approval of the scheme were accurate, will likely support Mr. Razak's defense that he did not engage in bribery, money laundering, or public corruption.

55. Malaysia is receptive to this type of Section 1782 discovery and would allow such discovery through its own courts if the prospective witnesses were not in Malaysia, as provided under Sections 51 of the CPC and if their statement were recorded pursuant to Section 112 of the CPC, Section 30 of the Anti-Corruption Commission Act, and Section 32 of the Anti-Money Laundering Act 2001. 2d Shafee Decl. ¶ 27. Petitioner will not face any barriers to using the information discovered in this proceeding in the Malaysian Proceeding by virtue of Section 32(1)(c) of the Evidence Act.  2d Shafee Decl. ¶¶ 20-23.

56.  The Malaysian people also have a manifest interest in Petitioner receiving as fair and comprehensive a trial as possible. Petitioner was Prime Minister for a decade. He is also alleged to have participated in corrupt activities and money laundering. Notably, he was only charged, however, after his political opponents gained power. Not surprisingly, his trial and continued prosecution remain an ongoing flashpoint in Malaysian politics and governance. Permitting discovery of facts known to key participants in the alleged conspiracy will help mitigate any potential perceptions that the trial of Mr. Razak, whatever the result, was unfair.

57. Accordingly the third Intel factor also 4th favors granting Petitioner's application.

*4th Intel Factor The Discovery Requests are Appropriately Tailored*

58.  Courts may consider whether the discovery requests under Section 1782 are "unduly intrusive or burdensome" and should be "rejected or trimmed." Intel, 542 U.S. at 265.

59.  Petitioner has closely tailored his discovery requests to the circumstances.  All that he seeks is exculpatory evidence, sourced from the Goldman Sachs-origin criminal discovery that was not already made public in Ng's 2023 trial and that is within the subset of evidence that Mr. Agnifilo and his colleagues flagged as exculpatory in their March 12, 2021 letter to Judge Brodie, which complained of the government's efforts to keep this evidence from

60.  Petitioner.  Moreover, Mr. Ng's counsel are the persons most likely to know where to find this evidence, as defense of their client's literally depended on spotting the documents of the kind mentioned in that March 2021 letter.

61. The universe of responsive documents is likely to be relatively small (considering the wide scope of the conspiracy), thereby not posing a significant burden. In any event, were the subpoena overly broad, the proper remedy would be to modify rather than to

quash it. *See Euromepa*, 51 F.3d at 1101 ("because Section 1782 gives the court complete discretion in prescribing the procedure for parties to follow in producing requested materials, we think that it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright" (quotation and internal citation omitted)). Petitioner also stands ready and willing to cooperate with Mr. Agnifilo and his law firm should they raise legitimate concern about the discovery requests' scope.

62. The fourth *Intel* factor therefore also weighs in favor of granting the instant application.

63. Accordingly, this Court should exercise its discretion in favor of Petitioner, to effectuate the twin aims of 28 U.S.C. § 1782: (1) "providing efficient means of assistance to participants in international litigation in our federal courts;" and (2) "encouraging foreign countries by example to provide similar means of assistance to our courts." Schmitz, 376 F.3d at 84 (quotation omitted).

64. Considering the parties involved and the nature and scope of the misconduct alleged, the Malaysian Proceeding is a matter of international interest and importance. The United States has already cooperated extensively with the government of Malaysia to return misappropriated funds. If a similarly situated defendant were being charged with a crime here, and there was accessible exculpatory information in a foreign country, it would be in the interest of the American judicial system for that defendant to get access to that foreign-controlled exculpatory material.

65. This case is an apt opportunity for the United States to set an example of assisting foreign courts when the interests of justice so require.

C. *Ex Parte Process is Available, Should The Court Prefer That Method*

66. In a cover letter accompanying this application, we explain that under the circumstances we prefer not to proceed ex parte and instead to serve our application papers concurrently on Mr. Agnifilo and his law firm. That said, the ex parte method is often appropriate under 28 U.S.C. § 1782 proceedings and indeed, is commonplace in this Circuit. *See, e.g., Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. July 3, 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."); *In re Hornbeam Corp.*, No. 17-658-CV, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018) (same); see also *In re O'Keefe*, 650 F. App'x 83, 85 (2d Cir. May 26, 2016) (rejecting the argument that it was improper to bring application ex parte). If the Court direct us to proceed ex parte, Mr. Agnifilo and his law firm would still have ample opportunity to object and/or to move to quash the subpoenas. *Gushla*k, 486 F. App'x at 217 (citing Fed. R. Civ. P. 45(c)(3)).

CONCLUSION

Petitioner therefore respectfully requests that the Court issue an order authorizing

Petitioner to initiate discovery and issue discovery orders in substantially the same form as the

three proposed sets of discovery instruments submitted herewith as exhibits.

DATED: July 30, 2025

Respectfully submitted,

Aurora Cassirer
aurora.cassirer@pierferd.com
tel: 917. 817. 6617
Jonathan E. Davis
jed.davis@pierferd.com
tel: 917.725.1340
PIERSON FERDINAND LLP
1270 Avenue of the Americas
7th Floor—1050
New York, NY 10020

Tania Scivetti (*Pro hac vice* motion to be filed)
SCIVETTI AND ASSOCIATES
M-2-20 1st Floor, Plaza Damas
50480 Kuala Lumpur
Malaysia
tania@scivettilegal.com